F I L E D
 Clerk
 District Court
APR 28 2020
for the Northern Mariana Islands
By_____
    (Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| PACIFIC RIM LAND DEVELOPMENT, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,<br><br>    Defendant. | Case No.: 19-cv-00016<br><br>**DECISION AND ORDER DENYING PLAINTIFF'S SECOND AMENDED APPLICATION FOR A MECHANIC'S LIEN** |

Before the Court is Plaintiff Pacific Rim Land Development, LLC ("Pacific Rim")'s Second Amended Application for a Mechanic's Lien (ECF No. 44). Defendant Imperial Pacific International (CNMI), LLC ("IPI") filed an opposition (ECF No. 49) to which Pacific Rim filed a reply (ECF No. 56). The Court held probable cause hearings on the application on December 26, 2019 and February 11, 2020. Having considered the arguments raised in the papers and at the hearings, and for the reasons stated herein, the Court DENIES the Second Amended Application for a Mechanic's Lien as untimely.

## I.   BACKGROUND

The facts as alleged in the Second Amended Application for a Mechanic's Lien ("SAA") are as follows: Plaintiff Pacific Rim is a licensed construction contractor. Pacific Rim and Defendant IPI

entered into a construction contract on February 13, 2018 for Pacific Rim to build a hotel-casino complex in Garapan, Saipan in the Commonwealth of the Northern Mariana Islands ("Commonwealth" or "CNMI"). (SAA ¶ 21, ECF No. 44.) Pacific Rim began work on the project, but eventually stopped because IPI did not pay it the amounts owed under the contract. (*Id.* at ¶¶ 23–25.) On September 21, 2018, the parties executed a Notice of Mutual Termination. (*Id.* ¶ 28; Notice of Mutual Termination at 2, ECF No. 49-7.) In the Notice of Mutual Termination, the parties agreed that Pacific Rim had completed portions of the project and that its obligations to continue to perform under the construction contract were complete. (Notice of Mutual Termination at 1, ECF No. 49-7.) IPI further agreed to pay Pacific Rim for the work completed. (*Id.*)

On the same day, IPI executed a promissory note in favor of Pacific Rim for $11.3M, which provided for a payment schedule over the next nine months with the entire amount to be paid on or before June 15, 2019. (SAA ¶ 33; Promissory Note, ECF No. 49-8.) As of the filing of the lawsuit, IPI owes Pacific Rim $5.65M on the promissory note. (SAA ¶ 35.) Under the terms of the promissory note, Pacific Rim has the right to accelerate in the event of a default. (Promissory Note at 2, ECF No. 49-8.) One year after the two agreements were signed, Pacific Rim initiated the pending lawsuit against IPI for breach of contract and breach of promissory note. On November 19, 2019, Pacific Rim filed an application for a Mechanic's Lien pursuant to 4 CMC § 5802. The CNMI Mechanic's Lien statute allows licensed construction contractors and material suppliers to place "a lien upon the improvement, as well as upon the interest of the owner of the improvement in the real property upon which the same is situated . . . for the price agreed to be paid." 4 CMC § 5802.

After a series of motions, Pacific Rim filed its Second Amended Complaint and Second Amended Application for a Mechanic's Lien on December 12, 2020. IPI opposed the lien application, arguing that it is untimely. The CNMI mechanic's lien statute provides two methods to determine the deadline for filing a lien application, both of which are calculated from the date of completion of the work on the improvement. 4 CMC § 5803(c). The parties highly contest the meaning of "completion" in section 5803(c). Pacific Rim argues that the term means completion of the entire project, whereas IPI argues it means completion of the contracted work at issue in the lien application. Using Pacific Rim's definition, the clock for filing has not yet started as the hotel-casino complex is not yet substantially completed or abandoned. But if IPI's interpretation is correct, then Pacific Rim's lien application is time-barred under the first method of calculating the filing deadline.[1]

## II.  LEGAL STANDARD

When construing a state statute, a district court looks to the state for rules of statutory construction. *Hunt v. Check Recovery Sys., Inc.*, 478 F. Supp. 2d 1157, 1162 (N.D. Cal. 2007). In the CNMI, "[t]he most basic canon of statutory construction is that the [statutory] language must be given its plain meaning, where the meaning is clear and unambiguous." *Saipan Achugao Resort Members' Ass'n v. Yoon*, 2011 MP 12 ¶ 23 (internal quotation marks omitted). Statutes must also be read "with an aim to effect the plain meaning of [its] object." *Marianas Eye Inst. v. Moses*, 2011 MP 1 ¶ 11 (internal quotation marks omitted). Courts "should avoid interpretations of a statutory provision which

---

[1] The Court had previously indicated its inclination to certify questions to the CNMI Supreme Court pursuant to Rule 13 of the Northern Mariana Islands Supreme Court Rules. On April 2, 2020, the Court informed the parties that it had reconsidered certification and would issue the present order.

would defy common sense [or] lead to absurd result." *Commonwealth Ports Auth. v. Hakubotan Saipan Enters., Inc.*, 2 N. Mar. I. 212, 224 (1991) (internal quotation marks omitted).

When applying mechanic's lien statutes, state courts must balance the remedial and statutory natures of the lien. 3 Philip L. Bruner & Patrick J. O'Connor, Bruner & O'Connor on Construction Law § 8:125 (perm. ed., rev. vol. 2020). "Different jurisdictions adopt different approaches as to whether the doctrine of substantial compliance applies to mechanics' lien requirements." *Id.*; *see also In re Corbin Park, L.P.*, 441 B.R. 370, 379 (Bankr. D. Kan. 2010), *aff'd*, 470 B.R. 573 (B.A.P. 10th Cir. 2012) ("In the enforcement of mechanic's liens, courts apply equitable as well as legal principles when the circumstances justify or require that to be done.") (applying Kansas law). "The nearest approach to a general rule which can be safely laid down would seem to be that the remedial portions of mechanic's lien statutes should be liberally construed, but that the other parts, those upon which the right to the existence of a lien depends, being a derogation of the common law, should be strictly construed." *Lewers & Cooke v. Wong Wong*, 22 Haw. 765, 768 (1915) (internal quotation marks omitted). The only Commonwealth court to address this balance called for strict compliance with the statute for the attachment of a mechanic's lien. *Misamis Corp. v. Glad*, Civil Action No. 00-0115B, Order Denying Application for Lien at 4 (N. Mar. I. Super. Ct. May 8, 2000) ("[T]o attain a mechanic's lien, a claimant must strictly comply with the terms of the statute. The failure to do so will be fatal to the request.").

/ / /

/ /

/

### III.   ANALYSIS

i.   <u>Date of Completion</u>

There is no Commonwealth case law interpreting the term "date of completion" in section 5803(c). This Court therefore must apply the principles of statutory interpretation, starting with plain meaning. The CNMI mechanic's lien defines date of completion as "the time when the owner, general contractor or material supplier for the improvement completes the delivery of a notice upon all other parties attesting that *the contracted work* on the improvement has been completed or has been abandoned due to non-payment from the owner." 4 CMC § 5803(c) (emphasis added). The statute clearly indicates that the timeliness of the lien is connected to the contracted work on the improvement. Pacific Rim interprets this language as *all* the contracted work on the *entire* improvement. However, the statutory definition of "improvement" undermines this reading of section 5803. The statute defines improvement as including:

> the construction, repair, alteration, of or addition to any building, structure, road, utility, railroad, or other undertaking or appurtenances thereto, and includes any building, construction, erection, demolition, excavation, grading, paving, filling in, landscaping, seeding, sodding, and planting, *or any part thereof* existing, built, erected, placed, made, or done on real property, or removed therefrom, for its benefit.

4 CMC § 5801(c) (emphasis added). Improvement, thus defined, does not refer to the entirety of a project, but rather encompasses discrete parts. Considering the plain language of the statute, date of completion is clearly tied to a contract and improvement may be a part of a larger project. Moreover, commonsense dictates that different contractors would fill different roles in a large construction project. For example, the company hired for construction may not have landscaping or demolition

expertise. Pacific Rim's proposed interpretation requires reading extra words into section 5803 and ignoring language in section 5801.

Because there is no CNMI case law interpreting the phrase "date of completion" in section 5803, both IPI and Pacific Rim point to state court decisions interpreting their own mechanic's lien statutes as guidance. However, "[b]y reason of the dissimilarity of the mechanic's lien statutes of the different states, the decisions of the courts of one state construing the statute of that state are generally not considered as of great value as precedents in construing the statute of another state." 56 C.J.S. Mechanics' Liens § 4.[2]  Indeed, a review of the cases cited by the parties proves this point. *See Neelu Enterprises, Inc. v. Agarwal*, 58 A.3d 828, 831 (Pa. Super. Ct. 2012) (Pennsylvania statute required lien claims to be filed "within six (6) months after the completion of his work"); *Howard S. Wright Constr. Co. v. BBIC Inv'rs, LLC*, 38 Cal. Rptr. 3d. 769, 776  (Cal. Ct. App. 2006) (California statute explicitly states that "[e]ach original contractor, in order to enforce a lien, must record his claim of lien after he completes his contract"); *Page v. Structural Wood Components, Inc.*, 102 S.W.3d 720, 724 (Tex. 2003) (Texas mechanic's lien statute includes retainage requirements that the Texas Supreme Court relied upon in interpreting the filing deadline).

Nevertheless, the Court finds these cases informative and notes that no case cited by either party adopts a timeframe for filing a mechanic's lien that is not connected to the performance of a specific contract. Pacific Rim cites only one case, *J.M. Beeson Co. v. Sartori*, 553 So. 2d 180 (Fla. Dist. Ct. App. 1989), to support its argument that substantial completion requires completion of the

---

[2] Not only do mechanic's lien statutes vary from state to state, but changes to text of a statute may render a state's own cases interpreting its mechanic's lien statute obsolete.

entire construction project such that the owner can occupy and use the space. (Pl's Memo on Timeliness at 2 n.4, ECF No. 35.)[3] *Sartori*, however, is inapposite. That case did not involve a mechanic's lien application, but rather the interpretation of a liquidated damages clause in a contract. *Sartori*, 553 So. 2d at 181. Moreover, the Florida court held that "substantial completion" is interchangeable with the "well-established doctrine of substantial performance." *Id.* at 182. This supports the proposition that completion is tied to an individual contract and not an entire project, undermining Pacific Rim's interpretation.

In addition, while recognizing the limitations of this exercise, the Court finds that generally state case law supports a contract-specific timeframe for mechanic's lien deadlines.[4] "A mechanic's lien requires proof of an express or implied contract, written or oral, between the claimant and the owner of the property to which the lien is to attach. The lien's lynchpin is the contract with the owner." *In re Corbin Park, L.P.*, 441 B.R. at 378 (citing Kansas law). Consequently, separate contracts require separate liens governed by separate deadlines. *Id.* at 379 (a contractor may not "enlarge his time to file

---

[3] Prior to the filing of the Second Amended Application for a Mechanic's Lien, the Court ordered the parties to submit supplemental briefs on the issue of the timeliness of the lien application. (Order Dismissing Complaint with Leave to Amend and Denying Application for a Mechanic's Lien Without Prejudice at 8, ECF No. 30.) The parties filed their briefs on December 6, 2019. (Pl's Brief re: Timeliness of Lien, ECF No. 35; Def's Memo in Support of Judgment on the Pleadings to Application for Mechanic's Lien, ECF No. 4 at 6–8, filed in related case *Pacific Rim Land Development, LLC v. Imperial Pacific International (CNMI) LLC*, 1:19-cv-00024.)

[4] The Court found only one state where a mechanic's lien filing deadline was tied to the completion of an entire project. In Oregon, the mechanic's lien statute, at one time, allowed for the filing of a lien "within 30 days of the completion of the building." *Wills v. Zanello*, 117 P. 291, 291 (Or. 1911). Nevertheless, the Oregon Supreme Court recognized "[t]o hold that one furnishing material to the person having the contract for the brickwork of a building must, before filing his lien, wait until the other contractors—the carpenter, tinner, plumber and painter—finish their contracts, and the building is completed (which is often a question of dispute)" was contrary to the statutory intent. *Id.* at 295.

his lien by tacking the prior owner's contract to a separate contract with a subsequent purchaser"). The Kansas mechanic's lien statute at issue in that case provided that "[a]ny person furnishing labor, equipment, material, or supplies used or consumed for the improvement of real property, *under a contract* with the owner . . . shall have a lien upon the property[.]" *Id.* (emphasis added). The Commonwealth mechanic's lien statute contains similar language that clearly presupposes the existence of a contract: "Any licensed construction contractor, or supplier of construction material for the improvement of real property, shall have a lien upon the improvement . . . *for the price agreed to be paid*[.]" 4 CMC § 5802 (emphasis added). If the right to a lien is contingent on an agreement, it is logical that the statutory filing deadline that explicitly references "contracted work" is also tied to that agreement.

Moreover, a contractor or subcontractor "knows when he performs his services or delivers his materials, and he knows whether or not he has been paid. It is not necessary to a claimant, nor is it fair to an owner or mortgagee, to extend the beginning of the lien period far beyond the date of the last furnishing of materials, services or labor." *Clegg Concrete, Inc. v. Kel-Bar, Inc.*, 393 So. 2d 178, 180 (La. Ct. App. 1980), *writ denied*, 398 So. 2d 531 (La. 1981) (quoting *Jeffers Trust v. Justice*, 253 So. 2d 234 (La. Ct. App. 1971)). Therefore, even equitable concerns do not justify a liberal interpretation of the statute.

Based on a plain reading of the statute supported by these authorities, the Court concludes that "date of completion" in section 5803 means date of completion of the performance of a specific contract between the owner and the lien claimant, either because the contracted work was substantially completed or abandoned. Here, the parties agreed in their notice of mutual termination that Pacific

Rim's obligations to perform under the contract were complete effective September 30, 2018. (Notice of Mutual Termination, ECF No. 49-7.) "[T]he execution of the termination agreement is substantively very informative as to the question of when [a general contractor] completed its work." *Neelu Enterprises*, 58 A.3d at 831 (holding that the date the parties terminated the contract was the date of completion for determining the timeliness of the mechanic's lien application); *see also Howard S. Wright Constr. Co.*, 38 Cal. Rptr. 3d. at 779 ("Simply put, a contract is complete for purposes of commencing the recordation period under [the mechanic's lien statute] when all work under the contract has been performed, excused, or otherwise discharged."). Even if Pacific Rim had not substantially completed all work envisioned in the contract by that date, it was released from those obligations and allowed to abandon the project. Therefore, the timeframe for filing a lien application turns on that September 30, 2018 completion date. The fact that the entire casino construction project is not yet completed or abandoned is irrelevant.

    ii.    <u>Filing Deadline</u>

Having determined the applicable date of completion, the Court turns to the question of timeliness of Pacific Rim's lien application. The CNMI mechanic's lien statute provides two methods of calculating the filing deadline for a lien application, one with delivery of a valid notice of completion and one without notice. 4 CMC § 5803(c). First, the statute states that lien applications shall not be filed "later than 60 days after the date of completing[5] of the improvement against which

---

[5] "[D]ate of completing" appears only one time in section 5803(c), and it appears to be a typographical error. Given the context, the Court finds that "date of completing" and "date of completion" as used in the statute are interchangeable.

it is filed." *Id.* Under this method, the 60-day clock starts on the date of completion. *Id.* However, delivery of a notice is not effective if it occurs before "there has been substantial completion of the improvement, delivery of the materials, or the improvement has actually been abandoned." *Id.* Alternatively, in cases without delivery of a valid notice of completion, the date of completion, triggering the 60-day filing period, is one year after the actual completion or abandonment of the improvement. *Id.*

IPI argues that the notice of mutual termination of the contract is a valid notice of completion under section 5803(c), thereby starting the 60-day filing clock. Pacific Rim counters that the statutory requirements regarding the delivery of a notice of completion should be strictly construed and that the mutual termination document does not comply with those requirements. Specifically, Pacific Rim argues that the mutual termination does not comply with the statute because it (1) is not properly titled; (2) does not use the terms "mechanic's lien" or "date of completion," (3) was not filed with the Commonwealth Superior Court, (4) was not attested; and (5) was not delivered to all other parties. (Pl's Memo on Timeliness, ECF No. 35 at 11–13.)

The CNMI mechanic's lien statute lays out minimal requirements for the notice of completion: "delivery of a notice upon all other parties attesting that the contracted work on the improvement has been completed or has been abandoned due to non-payment from the owner[.]" 4 CMC § 5803(c). There are no requirements that the notice be titled a specific way or contain certain language; the aim is to inform the necessary parties that the contracted work is either completed or abandoned. The statute does require that the party delivering the notice attest to its contents. Pacific Rim asserts that the notice should be "notarized, verified or signed under penalty of perjury." (ECF No. 35 at 12.)

10

However, as IPI notes, other sections of the CNMI code allow for attestation by signature alone. (Opposition Memo. at 16) (citing 1 CMC § 26013(c) ("The person completing the cause of death shall attest to its accuracy either by signature or by an approved electronic process.")). In addition, both parties signed the notice of mutual termination agreeing that Pacific Rim's obligations to perform under the construction contract were complete and Pacific Rim has not attacked the veracity of that statement. Pacific Rim's argument that the notice was not delivered to all parties is also unpersuasive. Here, there is no question that the notice was delivered to the relevant party, as representatives from both Pacific Rim and IPI signed it. (See Notice of Mutual Termination, ECF No. 49-7). Pacific Rim does not identify any other party who should have been given notice. Moreover, "[t]he purpose, and therefore the substance, of a notice of completion is to give notice to potential lien claimants that the project is complete and they must file their liens. The notice should be upheld if it provides proper notice to the lien claimant." *Gary C. Tanko Well Drilling, Inc. v. Dodds*, 172 Cal. Rptr. 829, 833 (Cal. Ct. App. 1981) (notice of completion that substantially, but not strictly, complied with statutory requirements was valid). Here, the notice of mutual termination did provide proper notice to Pacific Rim that its obligations under the contract were complete.

Pacific Rim's objection to the failure to record the notice of completion relies heavily on the Hawaiian mechanic's lien law. (Pl's Memo on Timeliness, ECF No. 35 at 12.) However, that reliance is misplaced. While the two laws are similar, there is no evidence that the CNMI legislature used the Hawaiian law as a model for the CNMI mechanic's lien statute. More importantly, even if it had, the CNMI statute created a completely different procedure for the notice of completion. In Hawaii, notice is by publication "in a newspaper of general circulation, printed and published in the county in which

the property involved is situated." Haw. Rev. Stat. § 507-43(f). The owner or contractor initiates the publication process, and once completed, the newspaper publisher then must promptly file an affidavit with the court clerk. *Id.* In Hawaii, the statute defines date of completion "as the time when the owner or the general contractor for the improvement completes the publication of a notice that the improvement has been completed or has been abandoned and an affidavit of the publication, together with a copy of the notice has been filed in the office of the clerk of the circuit court where the property involved is situated[.]" *Id.* Hawaii's 45-day clock for the filing of a lien application does not begin to run until both of these steps are completed. Haw. Rev. Stat. § 507-43(b).

Notice under the CNMI statute is quite different. Here, an owner or general contractor must deliver a notice of completion to all other parties. 4 CMC § 5803(c). Section 5803 does not require anyone to file the notice with the Superior Court. However, section 5804 of the mechanic's lien statute does provide for recording of both the notice of completion and the mechanic's lien application in the Superior Court:

> The clerk of the Superior Court shall keep a book called "Notice of Completion Record" in which shall be entered a memorandum of each Notice of Completion filed and the date of filing, arranged alphabetically by the names of the owners. There shall also be kept a "Mechanics' Lien Record" in which a memorandum of each Application for a Lien and Notice of Lien filed shall be entered[.]

4 CMC § 5804. Pacific Rim argues that to allow for notice without requiring filing with the Superior Court clerk would turn section 5804 into mere surplusage. (ECF No. 35 at 12.) A basic canon of statutory interpretation is that "[o]ne statutory provision should not be construed to make another provision [either] inconsistent or meaningless." *Saipan Achugao Resort Members' Ass'n v. Yoon*, 2011 MP 12 ¶ 23 (internal quotation marks omitted). If recording a notice of completion is not mandatory,

there are still reasons why a party would still opt to file one under section 5804. For example, an owner might want to protect itself from lien applications by unknown subcontractors hired by its general contractor or that owner may want to assure potential investors that lien deadlines have passed without the filing of any lien applications against the property. Even if the recording of the notice of completion is mandatory, here, unlike in Hawaii, the date of completion is not dependent on the recording date. Consequently, IPI could record the notice of mutual termination tomorrow and the date of completion would still be the effective date of delivery of the notice—September 30, 2018.

The notice of mutual termination provided proper notice to Pacific Rim that its obligations under the contract were complete. The Court finds that it is a valid notice of completion and, pursuant to section 5803(c), the timeframe for Pacific Rim to file a mechanic's lien application expired on November 29, 2018, 60 days after delivery. Pacific Rim first filed a lien application with this Court on November 19, 2019 (ECF No. 15), with the present application filed on December 12, 2019.

## IV. CONCLUSION

Mechanic's lien statutes are designed to protect contractors and suppliers of construction materials by providing a unique remedy in cases of non-payment by owners of construction projects. However, the right to a mechanic's lien is subject to filing deadlines that are strictly enforced to protect the rights of third parties from unknown encumbrances on property. In the CNMI, these deadlines are triggered by completion or abandonment of contracted work. Contractors know when and how they have performed and they know when their bills go unpaid. Moreover, the CNMI mechanic's lien statute incorporates a notice requirement for the shorter 60-day filing period, as compared to the generous year plus 60-day deadline in cases without valid notice. It is not unjust to require a contractor

who knows all the facts necessary to trigger a filing deadline to file a timely application. Here, Pacific Rim sat on its rights, and consequently lost the opportunity to obtain a mechanic's lien. For the reasons stated herein, the Court finds that Pacific Rim's Second Amended Lien Application is untimely and, therefore, it is DENIED.

IT IS SO ORDERED this 28th day of April, 2020.

RAMONA V. MANGLONA
Chief Judge