F I L E D
Clerk
District Court

AUG 22 2022

for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| PACIFIC RIM LAND DEVELOPMENT, LLC, | Case No.: 1:19-cv-00016 |
| Plaintiff, | |
| vs. | **MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO RECONSIDER, TO AMEND THE SCHEDULING ORDER, AND FOR LEAVE TO AMEND PLEADINGS** |
| IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, | |
| Defendant. | |

Defendant Imperial Pacific International (CNMI), LLC ("IPI") moved the Court to reconsider its prior order denying IPI leave to amend to assert counterclaims. ("Mot.," ECF No. 301.) IPI also moved the Court to amend the Scheduling Order and for leave to amend its pleading to assert counterclaims. (*Id*.) Plaintiff Pacific Rim Land Development, LLC ("Pacific Rim") timely filed its opposition ("Opp'n," ECF No. 304), and IPI a reply ("Reply," ECF No. 309). The matter came on for a hearing during which time the Court heard arguments from counsel but continued the matter. (Min., ECF No. 313.) Having considered counsels' arguments, the briefs, the procedural history of this case, and applicable law, the Court DENIED IPI's motions on the record on March 4, 2022. (Min., ECF No. 320.) The Court now issues this decision memorializing its reasons.

# I.   BACKGROUND[1]

On April 16, 2020, IPI filed its answer to Pacific Rim's second amended complaint and included four counterclaims: (1) promissory fraud, (2) fraud in the inducement as to the promissory note, (3) violation of the Consumer Protection Act, and (4) breach of contract. (Answer to SAC and Counterclaims ¶¶ 71–95, ECF No. 104.) Pacific Rim then moved to dismiss the counterclaims under Rule 12(b)(6) for failure to state a claim. (Mot. to Dismiss, ECF No. 160.)  IPI did not file a timely opposition, but the Court granted an extension considering IPI's change in counsel. (Min., ECF No. 170.) However, instead of filing an opposition, IPI filed amended counterclaims on July 22, 2020. (ECF No. 177.) The Court struck the amended counterclaims because the filing did not comport with Federal Rule of Civil Procedure 15(a). (ECF No. 180.)

IPI then filed its first motion for leave to amend its counterclaims on July 31, 2020 to allege three causes of actions (1) breach of contract, (2) unjust enrichment for not paying employees according to the wage schedule, and (3) unjust enrichment related to the promissory note. (First Mot. to Am., ECF No. 184; Proposed Am. Counterclaims ¶¶ 69–87, ECF No. 184-2.)  The matter came on for a hearing on September 10, 2020, at which time the Court denied IPI's motion for leave to amend counterclaims—specifically, *without prejudice* as to the first two claims because of IPI's failure to meet the construction contract's Article 20 negotiation and/or mediation requirement, and with prejudice as to the third claim because of res judicata.  (Min., ECF No. 205.)  The Court also granted

---

[1] Much of the relevant procedural history in this case is already set forth in the Court's March 22, 2021 order denying IPI's second motion for leave to amend. (ECF No. 269.) However, given the significance of the procedural history in the analysis of IPI's instant motions, the Court will reiterate the procedural history here.

Pacific Rim's motion to dismiss IPI's four counterclaims, specifically with prejudice as to the promissory fraud, fraud in the inducement as to the promissory note, and violation of the Consumer Protection Act claims given IPI's abandonment of those claims, but without prejudice as to IPI's breach of contract claim so that IPI could satisfy Article 20's negotiation and/or mediation requirement. (*Id.*)   The Court then issued a written memorandum decision on October 15, 2020 memorializing its reasoning. (Mem. Decision, ECF No. 217.)   Shortly after, the Court issued a scheduling order on October 20, 2020 adopting the parties' stipulated dates, including setting the amendment of pleadings deadline on January 26, 2021. (Scheduling Order, ECF No. 228.)

Three months later, after the scheduling order issued and one week prior to the January 26 deadline, IPI filed a motion for an extension of time pursuant to Local Rule 7.1(f) to extend the January 26 deadline for 30 days to February 26, 2021 and requested that this motion to be heard on shortened time. (Mot. to Extend at 2, ECF No. 241.)   The reason for requesting an extension was that IPI's then-attorney, George Hasselback, had a pending motion to withdraw that would not be heard until after the amendment deadline, and an extension would permit new counsel to file the motion to amend. (*Id.*)   However, because the Court had not yet granted the request for shortened time, IPI filed its motion for leave to amend counterclaims on January 26, 2021, again including its prior breach of contract claim for Pacific Rim's poor workmanship, but including a new, alternative claim of unjust enrichment. (Mot. to Am., ECF No. 247; Proposed Am. Counterclaims ¶¶ 9-21, ECF No. 247-2.) However, the attached proposed amended counterclaims failed to comport with Federal Rule of Civil Procedure 11(a), as it was not signed by counsel. (*See* Proposed Am. Counterclaims, ECF No. 247-2.)

3

Two days later, the Court granted IPI's request that the motion for extension be heard on shortened time.  (Min., ECF No. 248; Order Granting Request, ECF No. 249.)  The matter was heard on February 4, 2021, during which time the Court denied IPI's motion for extension of time given IPI's failure to demonstrate good cause pursuant to Federal Rule of Civil Procedure 16(b) and failure to act diligently in trying to meet the scheduling order's deadline or to meet Article 20's contractual pre-requisite.  (Min., ECF No. 251; *see Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 606, 609-610 (9th Cir. 1992) (noting that "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment").) During the hearing on the motion, counsel for IPI conceded that IPI had not yet met Article 20's negotiation and/or mediation requirement, as there were two meet and confers that occurred beginning in mid-January, but negotiations ultimately failed.  (*See* Hasselback Decl. ¶ 4, ECF No. 247-2 (noting same).) Furthermore, IPI conceded that although a mediation was scheduled, IPI cancelled the mediation the day of. Finally, Pacific Rim's counsel informed the Court that IPI failed to produce a person with knowledge about the basis of the counterclaims at the Article 20 negotiation meeting, and therefore Pacific Rim does not foresee any basis for IPI to support any counterclaim. Based on these facts, the Court denied IPI's motion for an extension of time to file an amended pleading. (Min., ECF No. 251.)

The Court then ordered briefing on IPI's pending motion for leave to file an amended counterclaim. (*Id*.) On February 9, 2021, Pacific Rim filed its opposition to IPI's motion for leave to amend counterclaims (Opp'n, ECF No. 252), to which IPI did not file a reply. The Court in a written order on March 22, 2021 denied IPI's motion for leave to amend counterclaims, or phrased correctly, IPI's motion for leave to amend the pleadings to assert counterclaims since IPI had no pending

counterclaims at the time. (Order Denying Mot. for Leave, ECF No. 269.) In doing so, the Court reasoned that IPI's motion was filed in bad faith, especially given that it failed to satisfy Article 20's condition precedent prior to filing. (*Id*. at 6.) Moreover, IPI's counterclaims would have been futile, for the same reason of failing to satisfy Article 20, and because the conclusory facts alleged in the proposed pleadings regarding poor workmanship failed to state claims upon which relief could be granted. (*Id*. at 9.) The Court therefore denied **with prejudice** IPI's motion for leave to amend its counterclaims, and made clear that "IPI has no pending counterclaims in this matter." (*Id*. at 11.)

**Nine months** later, IPI in its instant motion moves the Court to reconsider its March 22, 2021 order denying IPI leave to amend its counterclaim (Notice of Mot. for Reconsideration, ECF No. 301; Mem. in Law ("Mot."), ECF No. 301-1). IPI's primary basis for the motion is that it has now satisfied Article 20's condition precedent. IPI also moves the Court to amend the scheduling order and to grant leave for IPI to amend its pleading to assert counterclaims. (*Id*.) IPI's draft counterclaims, attached as Exhibit 1 to the motion, assert claims for (1) breach of contract, based on Pacific Rim's failure to implement a construction plan for completion, assign qualified individuals to perform the work, conduct work in workmanlike manner, and perform the contract in accordance with the implied covenant of good faith, and (2) for unjust enrichment. (Proposed Counterclaims ¶¶ 81–94, ECF No. 301-2.) IPI alleges that as a result of Pacific Rim not completing the project on time and given Pacific Rim's non-workmanlike performance, IPI had to delay opening and make substantial repairs. IPI thus seeks approximately $10 million in direct damages from the breach of contract, consequential damages of $100 million, as well as liquidated damages and/or restitution. (*Id*.)

Pacific Rim filed its opposition to the motion on January 18, 2022 (Opp'n, ECF No. 304), and IPI filed a reply (Reply, ECF No. 309). The Court heard arguments from counsel on February 10, 2022 (Min., ECF No. 313), but continued the matter to March 4, 2022. On that later date, the Court denied IPI's motions on the record (Min., ECF No. 320), for the reasons set forth below.

## II.        MOTION TO RECONSIDER

IPI first moves the Court to reconsider its March 22, 2021 interlocutory order denying IPI leave to amend its counterclaim.

### A.  **Legal Standard**

"The general rule regarding the power of a district court to rescind an interlocutory order is as follows: 'As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, *rescind*, or modify an interlocutory order for cause seen by it to be sufficient.'" *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)) (emphasis in original). Such a power is consistent with Federal Rule of Civil Procedure 54, which provides that "any order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Baldwin v. United States*, 823 F. Supp. 2d 1087, 1098 (D. N. Mar. I. 2011) (quoting Fed. R. Civ. P. 54(b)). Nonetheless, such "power to rescind, reconsider, or modify an interlocutory order is derived from the common law, not from the Federal Rules of Civil Procedure." *City of Los Angeles*, 254 F.3d at 886. It is a "plenary power to be exercised in justice and good conscience, for cause seen by [the district court] to be sufficient." *Baldwin*, 823 F. Supp. 2d at 1098 (internal quotations and

citations omitted) (alteration in original). One example would be a district court's grant of relief from manifest error. *Id.*

Given a district court's inherent power to reconsider its own interlocutory orders, it is not subject to the limitations of Federal Rule of Civil Procedure 59. *See Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000) (stating that when a district court issues "an interlocutory order, the district court has plenary power over it and this power to reconsider, revise, alter or amend the interlocutory order is not subject to the limitations of Rule 59."); *see also Abada v. Charles Schwab & Co., Inc.*, 127 F. Supp. 2d 1101, 1102 (S.D. Cal. 2000) ("A district court may reconsider and reverse a previous interlocutory decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of controlling law."). "But a court should generally leave a previous decision undisturbed absent a showing that it either represented clear error or would work a manifest injustice." *Abada*, 127 F. Supp. 2d. at 1102.

Moreover, the law of the case doctrine[2] "does not impinge upon a district court's power to reconsider its own interlocutory order provided that the district court has not been divested of jurisdiction over the order." *City of Los Angeles*, 254 F.3d at 888; *see also Askins v. U.S. Department*

---

[2] "The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Askins v. U.S. Department of Homeland Security*, 899 F.3d 1035, 1042 (9th Cir. 2018) (internal quotation marks and citation omitted). Under the law of the case doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court," except where "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 786–87 (9th Cir. 2011) (internal quotations and citation omitted), *overruled by Gonzalez v. Arizona*, 677 F.3d 383, 388–89 n.4 (9th Cir. 2012) (to the extent it applies to the circuit). "The law of the case is a guide to courts' exercise of discretion, rather than a rigid rule." *EEOC v. Serrano's Mexican Restaurants, LLC*, 306 F. App'x 406, 407 (9th Cir. 2009).

*of Homeland Security,* 899 F.3d 1035, 1042 (9th Cir. 2018) ("The law of the case doctrine does not, however, bar a court from reconsidering its own orders before judgment is entered or the court is otherwise divested of jurisdiction over the order."); *United States v. Norita,* 708 F. Supp. 2d 1043, 1052 (D. N. Mar. I. 2010) ("While the 'law of the case' doctrine does not limit a district court's power to reconsider its own interlocutory orders, whether or not to depart from the 'law of the case' is a matter of discretion."). Such a rule otherwise would be contrary and irreconcilable to the rule that a district court has "inherent power to reconsider, rescind, or modify an interlocutory order for cause seen by it" as long as it has jurisdiction.[3] *City of Los Angeles*, 254 F.3d at 889.

**B.  Discussion**

IPI grounds its motion for reconsideration on three grounds: (1) it has now satisfied Article 20's condition precedent, demonstrating sufficient cause; (2) the Court's interpretation of Article 20 was erroneous; and (3) permitting IPI to amend its pleading would promote judicial economy. The Court will consider each of these arguments.

**1)  Satisfaction of Article 20's condition precedent**

As sufficient cause for reconsideration, IPI posits that it has worked diligently in satisfying Article 20's condition precedent ever since new counsel became involved on March 23, 2021. (Mot. at 6-7.) IPI notes that beginning June 2021, it began discussions with Pacific Rim to schedule negotiations; that the parties conducted negotiations regarding Pacific Rim's active claims against IPI

---

[3] Pacific Rim argues that IPI's failure to satisfy any of the delineated law of the case doctrine reasons for reconsideration, such as clear error, change in law, changed circumstances, or manifest injustice, warrants denial of IPI's motions. (*See* Opp'n at 5-7.) The Court rejects this strict adherence to those considerations, however, as it would be contrary to the Court's inherent authority to reconsider its interlocutory orders.

and IPI's (proposed) claims against Pacific Rim on August 5 and 21, 2021; and after those negotiations proved unsuccessful at resolving the parties' claims, the parties on August 30, 2021 agreed to conduct mediation from October 21-22, 2021 led by Judith Ittig. (Mot. at 6.) The parties submitted mediation briefs and met over the course of two days, but after good faith efforts from both sides, the mediation concluded without resolving the parties' claims. (*Id*. at 7.) "Having now completed the condition precedent required by Article 20, and with fact discovery in this matter remaining open for several months . . . IPI moves the Court to reconsider its March 22, 2021 interlocutory order and grant IPI leave to amend its pleadings and to assert its claims against Pacific Rim as counterclaims in this action." (*Id*. at 10.)

The Court, however, does not find IPI's satisfaction of Article 20's condition precedent several months later convincing. As noted by Pacific Rim, IPI had the opportunity to satisfy this condition since the onset of this case and prior to the Court dismissing its counterclaims over a year ago. (*See* Opp'n at 20.) That IPI has now satisfied the condition precedent seven months after the Court denied its second motion for leave to amend its counterclaims, and nearly a year after the Court originally dismissed IPI's first motion for leave to amend its counterclaims on October 15, 2020 due to the failure to satisfy Article 20 does not demonstrate sufficient cause warranting reconsideration. Rather, this demonstrates IPI's bad faith and delay tactics, as well as an attempt to get a third bite at the apple. Weighing heavily against IPI is that as early as January 13, 2020, IPI knew of Article 20's negotiation/mediation requirement, as it was the party asserting Article 20 against Pacific Rim in trying to dismiss Pacific Rim's second amended complaint. (Mot. to Dismiss, ECF No. 66.) Its motion

two years later to claim satisfaction of the condition precedent runs contrary to the notion of sufficient cause.

### 2)   IPI argues the Court interpreted Article 20 incorrectly

IPI next contends that the Court erred in its interpretation of Article 20. (Mot. at 21-24.) In previously addressing Article 20 for IPI's first motion for leave to amend, the Court stated that:

> Article 20.1 of the parties' contract, in relevant part, provides that "[a]ny controversy or claim arising out of or relating to this Agreement or the breach hereof, shall be subject to good faith negotiation and/or mediation as a condition precedent to binding dispute resolution." (Contract at 22).  In addressing IPI's motion to dismiss this lawsuit against it based on this same issue, this Court previously concluded that the clear and unambiguous language of Article 20 provided for good faith negotiations as the first step and mediation as a mandatory second step only where negotiations were not fruitful, and that negotiations and/or mediation were a condition precedent to litigation.  (Decision and Order at 6.)
> . . . .
> Because the parties' contract requires that "*[a]ny* controversy or claim arising out of or relating to this Agreement or the breach  hereof" be subject to good faith negotiations and/or mediation (Contract at 22), each of IPI's counterclaims had to be subject to good faith negotiations and/or mediation prior to litigation. However, IPI has failed to allege any facts indicating negotiations or mediation surrounding Pacific Rim's alleged breach of the contract for poor performance and using unqualified labor, unjust enrichment for not paying employees according to the wage schedule, and unjust enrichment regarding the promissory note—claims clearly distinct from Pacific Rim's breach of contract claim against IPI for its alleged failure to pay.  In fact, IPI's amended counterclaims make no mention of generally satisfying the condition precedent at all.  *See* Fed. R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed.").  Therefore, IPI's counterclaims at this stage would be futile.  *See Franke v. Yates*, No. 19-cv-00007-DKW-RT, 2019 WL 4856002, at *5 (D. Haw. Oct. 1, 2019) ("The consensus among district courts is that failure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal under Rule 12(b)(6).") (internal quotations and citations omitted).

(Mem. Decision at 6-7, ECF No. 217.)  The Court therefore denied IPI's motion for leave to amend its counterclaims without prejudice and concluded that it would grant leave for IPI to amend its breach of contract and unjust enrichment claims upon satisfaction of Article 20's negotiation and/or mediation requirement. (*Id.* at 8.) But by the scheduling order's deadline for amendment of pleadings, IPI again failed to satisfy the Article 20 condition precedent; the Court thus noted that IPI's counterclaims would be futile and denied IPI's second motion for leave to amend its counterclaim. (*See* Order Denying Mot. for Leave at 9, ECF No. 269.)

In its third bite of the apple, IPI now points finger at the Court for interpreting Article 20 incorrectly.  IPI asserts that the Court failed to consider the meaning of "controversy" in its interpretation of Article 20, thereby ignoring the potential that "once one party commences binding dispute resolution and places the controversy before a court, parties may each assert their claims as part of that litigation." (Mot. at 22.) IPI's interpretation of Article 20 is premised on "controversy" meaning "case," broader than a claim, and therefore once negotiation and/or mediation took place regarding a controversy/case and the controversy/case was then submitted to binding dispute resolution, Article 20 would allow parties to assert *any* additional claims that are part of that controversy/case without having to again go through the Article 20 process. In support of its argument, IPI relies on Black's Law Dictionary (11th ed. 2019), which defines "claim" as an assertion or demand, and "controversy" in the context of constitutional law as a "case that requires a definitive determination of the law on the facts alleged for the adjudication of an actual dispute." IPI therefore equates "controversy" with "case," in line with Article III's "case or controversy" justiciability

requirement, with the distinction that "controversy" refers to civil disputes as noted in *Chisholm v. Georgia*, 2 U.S. 419, 431-32 (1793).

The Court rejects this broad interpretation of Article 20, as it runs contrary to the canons of contract interpretation. In interpreting contracts, federal courts apply state law to questions of contract interpretation. *In re Cty. of Orange*, 784 F.3d 520, 530 (9th Cir. 2015). "Under Commonwealth law, the interpretation of a contract relates to the ascertainment of its meaning, and the intent of the contracting parties is generally presumed to be encompassed by the plain language of the contract terms." *Commonwealth Ports Auth. v. Tinian Shipping Co. Inc.*, 2007 MP 22 ¶ 15 (N. Mar. I. 2007) (cleaned up). "[T]he language in a contract is to be given its plain grammatical meaning unless doing so would defeat the parties' intent." *Id.* ¶ 17. In interpreting a contract, a court should look within the four corners of the document only. *Id.* "[I]n the Commonwealth, our primary concern in contract interpretation is to determine and give effect to the intentions of the parties as expressed in the instrument[.]" *Id.* ¶ 16. Only if the terms of the contract are ambiguous should a court look to extrinsic evidence to determine the parties' intent. *Riley v. PSS*, 4 N. Mar. I. 85, 1994 WL 111129, at *2–3 (N. Mar. I. 1994). "Confining our inquiry to the four corners of a contract is the most equitable method of determining the parties' intent. Doing so allows the court to interpret what both parties agreed to and not what the contract may have devolved into." *Commonwealth Ports Auth.*, 2007 MP 22 ¶ 17.

Here, the relevant contract provisions at issue provide:

> 20.1 Any controversy or claim arising out of or relating to this Agreement or the breach hereof, shall be subject to good faith negotiation and/or mediation as a condition precedent to binding dispute resolution. IPI and Pacific Rim will attempt in good faith to promptly resolve any controversy or claim arising out of or relating to this Agreement or the breach thereof by negotiations between representatives of

each party who have authority to settle the controversy. *The disputing party shall give the other party written notice of the dispute, which notice shall include a general description of the dispute*, and the name and title of the individual who will represent that party. The representatives shall meet at a mutually acceptable time and place within seven (7) business days after the date of the disputing party's notice and thereafter as often as they reasonably deem necessary to exchange relevant information and to attempt to resolve the dispute.

20.2 If good faith negotiations are not successful, the parties shall endeavor to resolve their disputes by mediation.

20.3 In the event of litigation that may be filed by either party, any lawsuit or proceeding regarding or relating to an unresolved dispute between the parties, regardless of whether there are other parties to dispute, shall be commenced and filed before the Courts in the CNMI . . . .

(*See* Construction Contract at 22, ECF No. 49-3) (emphasis added).

Looking within the four corners of the contract, there can be no justification to construe "controversy" so broadly to mean "case" and to read Article 20.1 so broadly to allow litigation on any claims once litigation starts. IPI would like the Court to read the "controversy or claim" in isolation to support its broad interpretation.[4] But such reading in isolation without accord to the rest of Article 20.1 leads to inconsistencies and runs astray from the parties' intent, especially as it pertains to notice to the other party regarding disputes. Notably, Article 20.1's good faith negotiation requirement requires that "[t]he disputing party shall give the other party written notice of the dispute, which notice shall include a general description of the dispute, and the name and title of the individual who will represent that party." This language clearly contemplates notice of a particular topic or issue prior to

---

[4] IPI's arguments also wholly ignore that "controversy" can also mean a "claim." *See* Separable Controversy, Black's Law Dictionary (11th ed. 2019) ("A claim that is separate and independent from the other claims being asserted in a suit.").

binding dispute resolution so that the parties can resolve it short of litigation, contravening IPI's interpretation of controversy as case and making plain that "controversy" can only mean a particular dispute. If this was not clear enough, the Court's reading of "controversy or claim" is also affirmed when reading it alongside Article 20.3, which discusses litigation over "unresolved" disputes. Article 20.3 clearly contemplates that only unresolved disputes can be commenced in litigation. IPI's interpretation, however, would allow it to spring up its counterclaims based on poor workmanship once Pacific Rim sought to negotiate its nonpayment claims and brought suit when negotiations and mediation failed, without any prior notice and without attempts at negotiating that issue at all. Such an interpretation is contrary to the intent of the parties as expressed in the four corners of the contract. Yet IPI would like the Court to read Article 20 differently for the first time, after the Court already granted three prior orders regarding Article 20. (*See* ECF Nos. 105, 217, 269.)

IPI additionally argues that its interpretation of Article 20 would be more consistent with how this Court has been applying Article 20 to Pacific Rim's claims. IPI contends that "[i]t would be inconsistent for the Court to determine that negotiation of the promissory note satisfied Article 20 for each of Pacific Rim's breach of contract and unjust enrichment claims and that Pacific Rim could also continue to pursue each of those claims," but that IPI's breach of contract claim and unjust enrichment claims cannot go forward. (Mot. at 24; Reply at 4.) The Court finds this argument unpersuasive, however, because Pacific Rim's breach of contract and unjust enrichment claims over IPI's failure to pay were subject to Article 20's condition precedent. The dispute over IPI's failure to pay resulted in the promissory note after negotiations were *successful*. IPI then unfortunately breached that same promissory note that was the product of Article 20. IPI's proposed counterclaims for the same legal

claims of breach of contract and unjust enrichment, on the other hand, are based on Pacific Rim's poor workmanship and use of unqualified labor, issues wholly distinct from IPI's nonpayment. IPI's attempt to paint the Court as favoring one party over the other falls flat on its face.

### 3) Promoting judicial economy

Finally, IPI argues that the Court should reconsider its motion denying IPI leave to amend, because allowing IPI to amend its pleadings would promote judicial economy. IPI premises this argument on the basis that its counterclaims are permissive—not compulsory—counterclaims pursuant to Federal Rule of Civil Procedure 13, given that they had not yet been matured for failure to meet the condition precedent. (Mot. at 23-24.) If the Court denies IPI's motion for leave here, then IPI argues that its alternative recourse would be to file a separate lawsuit against Pacific Rim regarding these claims, contravening Federal Rule of Civil Procedure 1's focus on the just, speedy, and inexpensive determination of cases. In support of its argument that IPI's counterclaims are not compulsory, it relies on *Stone v. Department of Aviation*, 453 F.3d 1271, 1267 (10th Cir. 2006) for its proposition that "a party does not have a matured claim, sufficient to be deemed a compulsory counterclaim, if that claim is subject to dismissal because all the conditions precedent to asserting it have not yet occurred," and *Local Union No. 11, International Brotherhood of Electrical Workers v. G.P. Thompson Electric, Inc.*, 363 F.2d 181, 183–84 (9th Cir.1966) for its holding that Federal Rule of Civil Procedure 13(a) does not require a party to assert counterclaims for which a condition precedent has not yet been fulfilled.

Pacific Rim, in response, counters that IPI's counterclaims are compulsory counterclaims because they arise out of the same transaction, and therefore IPI's arguments about just resolution fail

because these claims would be subsequently barred by res judicata or estoppel if brought in a separate action. (Opp'n at 19-20.) Pacific Rim also highlights how IPI's caselaw are distinguishable.

The Court finds Pacific Rim's arguments persuasive. Federal Rule of Civil Procedure 13(a) states that:

> A pleading must state as a counterclaim any claim that--at the time of its service--the pleader has against an opposing party if the claim (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Here, IPI's counterclaims based on breach of contract and unjust enrichment are based on the same transaction or occurrence as Pacific Rim's claims, as both parties' disputes arise out of the same construction contract. Thus, IPI's counterclaims are compulsory, and a "counterclaim which is compulsory but is not brought is thereafter barred." *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974); *see also Dragor Shipping Corp. v. Union Tank Car Co.*, 378 F.2d 241, 244 (9th Cir. 1967) ("Under Rule 13(a) a party who fails to plead a compulsory claim against an opposing party is held to have waived such claim and is precluded by res judicata from bringing suit upon it again." (citing *Local Union No. 11*, 363 F.2d at 184)).

The cases cited to by IPI regarding maturity of claims are also distinguishable. In *Local Union No. 11,* 363 F.2d at 183–84, the parties' Collective Bargaining Agreement in Local Union No. 11 had an arbitration exhaustion requirement for certain grievances before seeking judicial relief. The Court found, however, that requiring the appellant to assert its claim, which were being processed through the arbitration provisions of the Collective Bargaining Agreement, as compulsory counterclaims to appellees action, which was *not covered* by arbitration, would be "contrary to the national labor policy

as set forth in the Labor-Management Relations Act, and contrary to the principles enunciated in many decisions by the Supreme Court." *Id*. at 185. The Court reasoned that "[i]f one of the disputing parties could, by filing a complaint alleging a grievance outside the scope of the agreement for arbitration, force his opponent to by-pass arbitration and assert counterclaims as to controversies otherwise arbitrable, the desired intent and purpose of arbitration agreements could be effectively frustrated." *Id.* But the situation here is quite different from that in *Local Union No. 11*. Both Pacific Rim and IPI's claims are subject to Article 20's condition precedent, such that one party would not be forcing the other to by-pass any conditions. Moreover, the dispute in *Local Union No. 11* was properly submitted for arbitration, whereas IPI prolonged Article 20 from being satisfied for its claims. The Court refuses to reward IPI for its unclean hands.

The Tenth Circuit case *Stone v. Department of Aviation*, 453 F.3d at 1267, is likewise distinguishable and does not support IPI's claim, for the reason that the claim in that case did not mature yet because it required a right to sue letter from the EEOC. The Tenth Circuit therefore found that this claim was not precluded for not having been asserted at a prior state-court proceeding, whereby plaintiff-appellant Stone would not have had sufficient time to file his answer if he had to wait 180 days to obtain a right to sue letter from the EEOC. *Id*. at 1273, 1277. Thus, in both *Local Union No. 11* and *Stone,* the plaintiffs' filing of their cases impacted the timing of their opponents' claims and the ability to mature those claims via exhaustion of other remedies first. However, here, IPI had ample time to satisfy Article 20 prior to filing its counterclaims if it had exercised due diligence, but its own behavior caused it to fall short of timely satisfying the condition precedent.

As this claim is a compulsory counterclaim, IPI cannot assert it at a subsequent litigation. Accordingly, IPI has failed to demonstrate sufficient cause for reconsideration such that the current status remains the same: IPI cannot amend its pleading to assert counterclaims. IPI's motion for reconsideration is DENIED.

## III.    MOTION TO AMEND SCHEDULING ORDER

### A.  **Legal Standard**

Where the deadline for amending pleadings under the Scheduling Order has expired prior to the filing of the motion to amend the pleadings, good cause must be addressed under Rule 16 prior to the Rule 15 inquiry. *Coleman v. Quaker Oats Co*., 232 F.3d 1271, 1294 (9th Cir. 2000). "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).   In *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 606, 609-610 (9th Cir. 1992), the Ninth Circuit Court noted that:

> "A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under ... Rule 15. Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)' s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. . . . Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief . . . . Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end."

(internal quotations and citations omitted).

"[U]nder case-specific circumstances, the 'diligence' inquiry may turn on consideration of the movant's diligence before the deadline for amendments, between the deadline and the motion to amend, between the discovery of new information and the motion to amend, or in *all* of these time frames." *Aldan v. World Corp*., 267 F.R.D. 346, 357 (D. N. Mar. I. 2010) (emphasis in original).

**B.  Discussion**

As a preliminary matter, Pacific Rim contends that procedurally IPI should have first moved to reconsider the Court's prior order denying IPI's motion to amend the scheduling order. In failing to do so and failing to articulate any grounds for reconsideration, Pacific Rim argues that this motion should be denied. (Opp'n at 8-10). IPI contends that its current request to amend the scheduling order is a separate request independent of the Court's prior rulings on its denial. Based on the substance of IPI's motion, the Court does find this request independent.

As arguments for good cause, IPI argues that it has worked diligently in satisfying Article 20's condition precedent ever since new counsel became involved on March 23, 2021. (Mot. at 6-7.) Notably, IPI argues that its previous failure to satisfy the condition prior to the January 26, 2021 was due to the breakdown between IPI and its former counsel, George Hasselback, whom informed IPI that he would be withdrawing from the case in December 2020 and filed a formal motion to withdraw in January 4, 2021. (*Id*. at 11.) IPI argues that this breakdown culminated to a point where management declined to participate in mediation led by counsel in whom they had lost faith and who was seeking to withdraw. (*Id*.; *see also* Tao Xing Decl. ¶¶ 3-4, ECF No. 301-3.) IPI was then actively seeking new counsel, but by the time it retained new counsel on March 23, 2021, IPI was facing contempt sanctions and was ordered to make discovery productions and produce Rule 30(b)(6) representatives for

depositions to avoid entry of default. (Mot. at 12.) IPI's counsel was thus active in producing discovery, and according to IPI, has produced more than 30,000 pages of documents responsive to Pacific Rim's requests between March 31 and April 27, 2021 and has produced a witness for deposition on May 21, 2021. (*Id*.) Pacific Rim, on the other hand, has failed to produce documents to IPI's April 2021 discovery requests, according to IPI. (*Id*.)

IPI notes that beginning June 2021, it began discussions with Pacific Rim to schedule negotiations; that the parties conducted negotiations regarding Pacific Rim's active claims against IPI and IPI's (proposed) claims against Pacific Rim on August 5, 2021 and August 21, 2021; and after those negotiations proved unsuccessful at resolving the parties' claims, the parties on August 30, 2021 agreed to conduct mediation from October 21-22, 2021 led by Judith Ittig. (Mot. at 6.) The parties submitted mediation briefs and met over the course of two days, but after good faith efforts from both sides, the mediation concluded without resolving the parties' claims. (*Id*. at 7.)

IPI therefore argues that in light of these numerous factors, including the breakdown of IPI's attorney-client relationship with its prior counsel that led to IPI's failure to complete the Article 20 requirements prior to the deadline set forth in the Scheduling Order, IPI's subsequent diligence in complying with the Court's orders and completing negotiations and mediation demonstrates good cause to extend the deadline for amendment of the pleadings.

The Court finds IPI's arguments unpersuasive. IPI's attempts to constantly use change in counsel or new counsel as excuses for continuous delays does not demonstrate diligence. As noted by Pacific Rim, although IPI has been more diligent as of late given the tremendous efforts by current counsel, this does not demonstrate IPI's diligence since the inception of the case; rather, this highlights

IPI's tactics in choosing to defend a case when it merely chooses to do so to avoid having to pay judgments. (*See* Opp'n at 11-14.) This is evidenced by the fact that even through multiple rounds of counsel, IPI could not produce any representatives with personal knowledge of facts surrounding its proposed counterclaims. When IPI opposed Pacific Rim's motion for summary judgment back in March 2020, IPI argued that Pacific Rim's motion was premature and that IPI intended to raise the defense of fraud in the inducement based on similar facts of Pacific Rim's misrepresentation regarding use of skilled and qualified workers. (Opp'n to Mot. for Summary Judg. at 2-3, ECF No. 88.) But at oral argument on April 2, 2020, IPI's then-counsel, Joseph Horey of O'Connor Berman Horey & Barnes, LLC, could not identify any individual who could provide an affidavit attesting to the existence of facts that would support a fraud in the inducement defense. Then again in the attempted negotiations in January 2021 when Hasselback was counsel, IPI could not present any person with personal knowledge of facts supporting its proposed counterclaims. The fact that IPI now years later can find someone with personal knowledge is both incredulous and concerning. IPI's blame on the breakdown of its relationship with its former counsel is misplaced.

Moreover, the cases that IPI relies on are distinguishable. In *Aldan*, for example, this Court previously allowed an amendment of the scheduling order to allow further amendments on pleadings based on facts later discovered through discovery, because the pre-deadline delays in discovery were excusable—namely "*both* [parties] expected the case to settle at an early settlement conference, so that they had not assiduously pursued discovery prior to that, because doing so might have involved unnecessary time and expense." *Aldan*, 267 F.R.D. at 358. The opposite occurred here, where IPI delayed mediation efforts, even when it was the party that asserted good faith negotiations and/or

mediation requirements against Pacific Rim. In *C.F. ex rel. Farnan v. Capistrano Unified School Dist.*, 654 F.3d 975, 984 (9th Cir. 2011), the Ninth Circuit affirmed the district court's grant of amendment of the scheduling order to allow defendant to assert an affirmative defense given that summary judgment changed the tenor of the case significantly. No facts changed here, other than new counsel.

The breakdown between IPI and its then counsel, Hasselback, cannot be used as an excuse for why the negotiations and mediation did not occur prior to the deadline, especially when IPI had about two months to attempt negotiations after the Court issued its memorandum decision denying the first motion to amend and prior to when counsel gave notice that it wanted to withdraw. Yet meet and confers did not occur until early January, notably during when counsel already gave notice that he intended to withdraw. Moreover, this does not explain why IPI could not have met and conferred even prior to the Court's October 2020 memorandum decision denying IPI's first motion for leave to amend, especially when IPI was the proponent of Article 20's requirement as early as January 2020 against Pacific Rim. That new counsel finally satisfied Article 20 after joining the case may demonstrate diligence as counsel, but it does not demonstrate the diligence of IPI since the inception of the case in 2019. *See Aldan,* 267 F.R.D. at 357 (noting that all time frames could be considered). The Court therefore DENIES IPI's motion to amend the scheduling order.

## IV.    MOTION FOR LEAVE TO AMEND PLEADINGS

Given that IPI has failed to demonstrate cause for reconsideration, the Court need not consider IPI's current motion for leave to amend, as the Court previously dismissed its motion *with prejudice*. Nonetheless, the Court will discuss IPI's current motion for leave to amend.

IPI's draft counterclaims, attached as Exhibit 1 to the motion, assert claims for (1) breach of contract, based on Pacific Rim's failure to implement a construction plan for completion, assign qualified individuals to perform the work, conduct work in workmanlike manner, and perform the contract in accordance with implied covenant of good faith, and (2) for unjust enrichment. (Proposed Counterclaims, ECF No. 301-2.) IPI alleges that as a result of Pacific Rim not completing the project on time and given Pacific Rim's non-workmanlike performance, IPI had to delay opening and had to make substantial repairs. IPI thus seeks approximately $10 million in direct damages from the breach of contract, consequential damages of $100 million, as well as liquidated damages and/or restitution. (*Id*.) This time, it alleges that the condition precedents have been met. (*Id*. ¶ 84.)

## A.  Legal Standard

"Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation omitted). The goal of this rule is to ensure that cases are decided on the merits, and not on technicalities. *Id.* at 181–82. If there is no "apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.[,]" courts should freely grant leave to amend. *Id.* at 182. Courts in the Ninth Circuit review motions to amend by considering four factors: "(1) bad faith on the part of the plaintiffs; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (citation omitted).

\

**B.  Discussion**

*1)  Bad Faith*

In  determining  bad  faith,  an  "amendment  should  be  permitted  unless  it  will  not  save  the complaint or the plaintiff merely is seeking to prolong the litigation by adding new but baseless legal theories." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 881 (9th Cir. 1999) (citation omitted). "[R]epetitious motions to amend and the filing of multiple amended complaints also raise an inference of bad faith." *McClellan v. Kern Cty. Sheriff's Office*, 2015 WL 4368454, at *2 (E.D. Cal. July 14, 2015).

IPI argues that its delay in moving to amend its pleadings is not demonstrative of bad faith or an attempt to gain a tactical advantage, but rather the delay occurred because of the breakdown between IPI and its former counsel. Moreover, IPI waited to file this motion until it finally met the Article 20 requirement so the Court would not again find bad faith. (Mot. at 19.) Pacific Rim in response argues that IPI failed to introduce the matter contained in the proposed amendment early in the litigation, making its motion suspect of bad faith. (Opp'n at 27.)

Despite Article 20 now being satisfied, the Court nonetheless finds IPI's instant motion as illustrative of bad faith. Notably, this is IPI's third motion for leave to amend the pleading, which in itself raises an inference of bad faith. IPI's blame on the deterioration of relationship with its prior counsel is not a sufficient excuse, especially when much of that deterioration is on the part of IPI. Given the numerous cases against IPI before this Court, the Court is well aware of IPI's constant change in attorneys. IPI cannot use this tactic as a shield to justify late filings.

\

### 2) Undue Delay

As to undue delay, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986). However, undue delay alone is insufficient justification for denying a motion to amend a pleading. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016). Courts have often denied motions to amend where there was substantial delay and the motion to amend came after discovery closed. *See, e.g., Tinker v. Aurora Loan Servs.*, 2:11-cv-00642-KJM-EFB, 2015 WL 1540579, at *9–13 (E.D. Cal. Apr. 7, 2015) (denying motion to file sixth amended complaint with nine new claims in 2014, when case was first filed in 2011, plaintiff was aware of the facts in 2011 but waited until two months after discovery closed); *Lockheed Martin Corp.*, 194 F.3d at 986 (delayed motion to amend that required reopening discovery and came after deadline for amendment in scheduling order was prejudicial).

IPI argues that its motion does not demonstrate undue delay because its delay was excusable in light of the deterioration of relationship with its prior counsel. Any further delays after that were due to IPI's efforts to comply with discovery deadlines. (Mot. at 16-17.) In response, Pacific Rim argues that IPI's attempts to bring these new claims for breach of contract and unjust enrichment represent undue delay because IPI learned of the facts supporting the counterclaims long before this motion was filed, but is now alleging for the first time that IPI stopped paying Pacific Rim because of Pacific Rim's breach of the contract. (Opp'n at 26.) In reply to Pacific Rim's arguments, IPI contends that it seeks to amend the pleadings to bring the same counterclaims of which Pacific Rim has been

on notice since at least July 2020 and about which Pacific Rim has already requested and received discovery. (Reply at 10.)

The Court finds that this factor weighs against IPI. On one hand, the fact discovery cutoff was March 18, 2022, and therefore discovery had not yet closed at the time of IPI's motion. On the other hand, IPI should have satisfied Article 20 much earlier. As early as January 13, 2020, IPI knew of Article 20's negotiation/mediation requirement, as it was the party asserting Article 20 against Pacific Rim in trying to dismiss Pacific Rim's second amended complaint. (Mot. to Dismiss, ECF No. 66.) IPI was also aware of many of its facts regarding defective work and poor workmanship much earlier, as its recently submitted proposed counterclaims (ECF No. 301-2) allege similar facts as the ones alleged in its initial counterclaims asserted nearly two years ago in April 2020 (*see* Answer to SAC and Counterclaims, ECF No. 104). Despite having knowledge of Article 20 and the facts regarding its proposed counterclaims, IPI failed to satisfy the Article 20 condition precedent, delayed negotiations, and failed to produce representatives having knowledge of the facts regarding the proposed counterclaims when the parties attempted to negotiate in early January 2021. For IPI to now say that it has satisfied the condition precedent and is now ready to proceed with its counterclaims two years later is the antithesis of undue delay as well as bad faith.

### 3) *Prejudice to Opposing Party*

"[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 216 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.*

Here, IPI argues that Pacific Rim cannot be prejudiced by IPI asserting the counterclaims because Pacific Rim has been aware of IPI's claims early on in the action, including through IPI's initial July 31, 2020 motion. (Mot. at 17.) Pacific Rim has also taken steps through discovery to obtain the information regarding IPI's claims, including in its first request for the production of documents, dated November 3, 2020 (Ex. 3, ECF No. 301-4) instructing IPI to produce broad categories of documents, including all documents supporting IPI's counterclaims against Pacific Rim; its second set of interrogatories, dated April 23, 2021 (Ex. 5, ECF No. 301-6) requesting information regarding IPI's counterclaims, including standard of care questions; and in its listed topics that Pacific Rim intended to question IPI's Rule 30(b)(6) representatives (Ex. 6, ECF No. 301-7). (Mot. at 17-19.)

Moreover, IPI argues that given that fact discovery was not set to close until March 18, 2022 with a trial date in August 2022, Pacific Rim would still have time to serve any additional necessary discovery requests and respond or move to dismiss IPI's counterclaims. (*Id.* at 20.) Because IPI's answer to Pacific Rim's Second Amended Complaint asserts off-set, Pacific Rim would have to be prepared to still answer regarding offsets.

In response, Pacific Rim maintains that "[i]f IPI is given leave to bring counterclaims at this late date, Pacific Rim will be compelled to continue litigating this matter," thereby requiring "Pacific Rim to incur extra time and expense defending." (Opp'n at 24.) IPI attacks this response as absurd and offensive, noting that Pacific Rim's pursuit of its remaining claim for breach of contract and unjust enrichment costed IPI much time and costs—including production of over 30,000 pages of discovery—where Pacific Rim only later indicated that it intended to dismiss these claims. (*See* Ex. 1 and 2, ECF Nos. 309-1 and 309-2.)

The Court finds that this factor weighs in favor of IPI. Notably, Pacific Rim's argument of prejudice based on having to still litigate the case is not a sufficient basis for prejudice. Pacific Rim has been on notice of IPI's attempted counterclaims since as early as April 2020, and has since even served discovery requests seeking information about those counterclaims. Moreover, based on the second amended Scheduling Order (ECF No. 289) that was in accordance to dates and deadlines stipulated to by the parties (ECF No. 288), fact discovery cutoff was March 18, 2022 and therefore had not yet closed. Pacific Rim is therefore not prejudiced if IPI were granted leave to amend its pleading.

### 4) *Futility*

In determining futility, "[a]n amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (quoting *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), *implied overruling on other grounds rec'd by Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). The "proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Miller*, 845 F.2d at 214 (citing 3 J. Moore, *Moore's Federal Practice* ¶ 15.08[4] (2d ed. 1974)).

"Ordinarily, affirmative defenses . . . may not be raised on a motion to dismiss except when the defense raises no disputed issues of fact." *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018) (citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam)). But an affirmative defense "may be considered properly on a motion to dismiss where the allegations in the

complaint suffice to establish the defense." *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (internal quotations and citation omitted); *see Goddard v. Google Inc.*, 640 F. Supp. 2d 1193, 1199 n.5 (N.D. Cal. 2009) (noting that "affirmative defenses routinely serve as a basis for granting Rule 12(b)(6) motions where the defense is apparent from the face of the [c]omplaint." (internal quotation marks and citation omitted)).

Given that Article 20 has now been met, failure to meet Article 20's condition precedent no longer provides a basis for IPI's claim to be futile. Nonetheless, Pacific Rim argues that IPI's counterclaims are futile because they are waived. First, Pacific Rim relies on the Notice of Mutual Termination agreed to between the parties and effective September 30, 2018 (ECF No. 49-7), which contains the provision: "Contractor began its work and completed portions of the Project and Owner agrees that Contractor's obligations to perform work under the Construction Contract are complete." (Opp'n at 23.)

Second, Pacific Rim relies on Article 5.7 of the Construction Contract, which provides that:

> The reconciliation of the Cost Projection Invoice and Contract Invoice shall be generated monthly. IPI will notify Pacific Rim in writing within ten (10) business days of receipt of the Contract Invoice of IPI's reasons, if any, for objecting to all or any portion of the Contract Invoice. Any objection to the Contract Invoice not timely made by IPI in writing will be waived. This section 5.7 is not subject to the General Waiver provisions of Article 17.

(ECF No. 49-3). Pacific Rim thus argues that by failing to object then to the invoices, IPI has waived its arguments. (Opp'n at 23.)

Third, Pacific Rim relies on the warranty period of the Construction Contract and argues that IPI failed to raise its issues within the warranty period, therefore constituting waiver. (Opp'n at 29.) The relevant provisions provide:

> 5.2A.   The Contractor Warranty shall commence upon Substantial Completion of the Work and expire 12 months thereafter ("**Warranty Period**"). The Contractor warrants to the Owner that the Work performed by Contractor shall be in accordance with this Agreement and the Contract Documents . . .

> 5.2B During the term of this Agreement and the Warranty Period, prompt written notice of all defects shall be given to the Contractor. The Contractor shall promptly make necessary corrections, including the repair of any Work. The parties will cooperate to avoid economic waste.

In response, IPI alleges that the Notice of Mutual Termination did not explicitly waive any of Pacific Rim's obligations under the contract. (Reply at 11.) Moreover, IPI alleges that Article 5.7 deals with invoices, but IPI's counterclaim for breach of contract is not based on invoices but rather on Pacific Rim's failure to implement a plan to meet the construction deadline, assign qualified personnel to perform in accordance to professional standards, and conduct work in a workmanlike manner. (*Id*.) Thus, IPI argues that Article 17 of the Construction Contract governs, which provides:

> Unless expressly stated elsewhere in this Agreement, the failure of the Parties to enforce, at any time, the provisions of this Agreement does not constitute a waiver of such provisions in any way or waive the right of the Party at any time to avail itself of such remedies as it may have for any breach or breaches of such provisions

> None of the conditions of this Agreement except 5.7 shall be considered waived by a party unless such waiver is explicitly given in writing by the other Party. No such waiver shall be a waiver of any past or future default, breach or modification of any of the terms of conditions of this Agreement unless expressly stipulated in such waiver.

(ECF No. 49-3 at 21.)

Having reviewed the parties' arguments, the Court finds that parts of IPI's counterclaims could be waived. However, because waiver is an affirmative defense, and such defense is not clear on the face of the pleading at this stage, the Court finds that Pacific Rim's arguments on waiver are not a sufficient challenge here.

In sum, the *Foman* factors of bad faith and undue delay weigh heavily against IPI, but prejudice and futility weigh in favor of IPI. In light of the entire procedural history of the case and given that IPI has failed to demonstrate a basis for reconsideration or good cause for amending the scheduling order, IPI's motions are DENIED.

## V.    CONCLUSION

It is unfortunate that months elapsed before IPI finally came to the table to negotiate and mediate with Pacific Rim. However, IPI's satisfaction of Article 20 is too little too late. For the reasons set forth above, IPI's motions to reconsider, to amend the scheduling order, and for leave to amend its pleading to assert counterclaims is DENIED.

IT IS SO ORDERED this 22nd day of August, 2022.

RAMONA V. MANGLONA
Chief Judge